UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

MARYBETH MONGOSA,

           Plaintiff,

    v.                                        CAUSE NO. 3:21-CV-642 DRL-MGG

KILOLO KIJAKAZI,
Acting Commissioner of the Social Security
Administration,

           Defendant.

## OPINION AND ORDER

Marybeth Mongosa appeals the Social Security Commissioner's final judgment denying her application for disability insurance benefits. Having reviewed the record and the parties' arguments, the court denies the remand request and affirms the administrative decision.

## FACTS

Marybeth Mongosa claims to suffer from a number of psychological impairments including borderline personality disorder, attention deficit hyperactivity disorder (ADHD), anxiety, bipolar disorder, and obsessive-compulsive disorder (OCD) [R. 37]. She claims these impairments make her easily sidetracked, distracted, subject to mood swings, and consistently late [*see id.* 42-43, 45]. Ms. Mongosa takes medicine for all of her conditions, but the symptoms of these conditions persist [*id.* 46]. While she is unemployed at the moment [*id.* 32], Ms. Mongosa has worked as an assembly worker, a hand packer, a machine operator, and as an assistant manager [*id.* 34-36].

On September 4, 2019, Ms. Mongosa filed a Title II application alleging she suffered from disability that began on July 23, 2018 [*id.* 15]. Her claim was initially denied on October 22, 2019 and denied again on reconsideration on December 10, 2019 [*id.*]. On November 20, 2020, ALJ John

Dodson held a hearing at which Ms. Mongosa and Melody Henry, a vocational expert, testified [*id.* 29]. After the hearing, the case was reassigned to ALJ Donald G. D'Amato [*id.* 15].

On January 7, 2021, the ALJ denied disability benefits [*id.* 12] after applying the five-step analysis required by 20 C.F.R. § 404.1520(a) [*id.* 17-23]. The ALJ found that Ms. Mongosa had bipolar disorder, ADHD, anxiety, and OCD; however, there was insufficient evidence to confirm borderline personality disorder [*id.* 17-18].

With these findings, the ALJ concluded that her impairments were not severe enough to qualify for disability [*id.* 18]. The ALJ determined that Ms. Mongosa only suffered moderate limitations in understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and managing herself [*id.* 18-19]. The ALJ based his determination on Ms. Mongosa's psychiatric examinations and her ability to take care of her daughter, go shopping, interact with family, and drive [*id.*]. Finally, the ALJ determined that Ms. Mongosa had the residual functional capacity (RFC) to perform a full range of work with some limitations, and she could return to one of her old jobs or find a new one, such as an office clerk [*see id.* 19-23].

Ms. Mongosa requested the Social Security Appeals Council review the ALJ's decision on March 3, 2021 [*id.* 4]. However, the appeals council denied her request for review on July 2, 2021 [*id.* 1]. Ms. Mongosa appealed on August 30, 2021 [ECF 1].

## STANDARD OF REVIEW

The court has authority to review the council's decision under 42 U.S.C. § 405(g), though review is bound by a strict standard. Because the council denied review, the court evaluates the ALJ's decision as the acting commissioner's final word. *See Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). An ALJ's factual findings will be conclusive if they are supported by "substantial evidence." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019). Substantial evidence is not a high bar. *Id.* at 1154. The standard simply means that the ALJ's decision must be supported by "such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consolidated Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). The court does not substitute its own judgment for that of the ALJ's by reevaluating the facts or reweighing the evidence to determine if the claimant is actually disabled. *Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995).

That said, the ALJ must still construct "a logical bridge" that is sufficient for the reviewing court to assess the validity of the ALJ's conclusion. *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014). Using boilerplate language or not confronting evidence that contradicts the ALJ's decision will cause the bridge to collapse, thereby resulting in a finding of error. *Id.* at 1122-23. An ALJ need not provide a complete account of every single piece of evidence. *Diaz*, 55 F.3d at 308. There only needs to be enough information to track the ALJ's reasoning. *Id.*

## DISCUSSION

An individual is disabled when she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment [that] can be expected to result in death or [that] has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). This impairment must be so severe that the individual "is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work [that] exists in the national economy, regardless of whether such work exists in the immediate area in which [she] lives, or whether a specific job vacancy exists for [her], or whether [she] would be hired if [she] applied for work." 42 U.S.C. § 423(d)(2)(A).

When evaluating whether an individual satisfies the statutory definition of disability, an ALJ follows a five-part inquiry assessing (1) whether the claimant is currently employed, (2) whether the claimant has a severe impairment, (3) whether the claimant's impairment is one that the Social Security Administration considers conclusively disabling, (4) if the claimant does not have a conclusively

3

disabling impairment, whether she can perform her past relevant work, and (5) whether the claimant can perform any work in the national economy. *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001) (citing 20 C.F.R. § 404.1520). Ms. Mongosa challenges the ALJ's findings in the third and fifth inquiries. She argues that both the ALJ's psychological impairment analysis and vocational analysis were not supported by substantial evidence.

    A. *Psychological Impairment Analysis.*

Ms. Mongosa argues that the ALJ's analysis of her psychological impairments wasn't supported by substantial evidence. She says the ALJ improperly relied on her ability to care for her child and failed to consider contrary medical opinion.

    1. *The ALJ's Use of Childcare as Evidence.*

Ms. Mongosa claims that the ALJ improperly relied on her ability to care for her child as evidence of no psychological impairment. She says the ability to care for children doesn't mean that she has the ability to work full-time outside the home, citing *Beardsley v. Colvin*, 758 F.3d 834, 838 (7th Cir. 2014), and *Gentle v. Barnhart*, 430 F.3d 865, 867-68 (7th Cir. 2005). The ALJ considered Ms. Mongosa's ability to care for her child when evaluating her ability to manage herself; concentrate, persist, or maintain pace; and understand, remember, or apply information [R. 18-19]. Ms. Mongosa claims that the mere use of childcare as evidence in evaluating disability is error.

Ms. Mongosa overstates this circuit's precedent. The law counsels caution, but there is no wholesale ban on considering daily activities, such as caring for children, when judging disability; rather, these considerations must be given proper weight based on contradicting evidence in the record and when evaluating the challenges of employment, not just casually equated. *See Beardsley*, 758 F.3d at 838 ("additional activities, such as taking care of pets, doing laundry, cleaning, and shopping" could provide support for a robust residual functional capacity); *Gentle*, 430 F.3d at 867 ("administrative law judge's casual equating of household work to work in the labor market cannot stand" because the

4

choice to care for her children "may impel her to heroic efforts" despite her difficulties that the judge overlooked).

Here, the ALJ never relied solely on Ms. Mongosa's ability to care for her child when making his impairment determination. As a threshold, and unlike the underlying concern in *Gentle*, 430 F.3d at 867, the ALJ acknowledged (rather than ignored) that Ms. Mongosa was not the only person providing care for her daughter. The ALJ thus recognized her limitations to perform these daily activities on her own rather than just casually equated her daily childcare to the demands of the workplace [R. 19 ("she has been able to *help* take care of her young daughter") (emphasis added), R. 20 ("her husband has to assist with these activities")].

The ALJ acknowledged Ms. Mongosa's reported difficulties in understanding, remembering, and following instructions, getting along with others, and adapting to changes and stresses, but the ALJ also relied on Ms. Mongosa's ability to care for her dogs, do laundry, drive independently, go shopping two to three times a week, spend time with her family, and the general findings from her psychiatric examinations that she had normal attention and concentration, a bright affect, and fair or good insight and judgment [R. 18-19]. Considering her childcare responsibilities in light of Ms. Mongosa's self-reported difficulties and the medical evidence, the ALJ concluded that she experienced "no more than a moderate limitation" in these domains [*id.*]. The ALJ thus considered all the evidence; and it was within his province to weigh it.

Because the ALJ considered multiple daily activities, including childcare, when assessing her abilities in the specified functional domains, and balanced these abilities with her own reported limitations and the medical evidence, the ALJ's use of Ms. Mongosa's childcare as one more consideration wasn't error. The administrative decision was supported by substantial evidence.

5

    2. *The ALJ's Interpretation of Medical Evidence.*

Ms. Mongosa asserts that the ALJ improperly interpreted her medical evidence when assessing her ability to understand and apply information; interact with others; concentrate and maintain pace; and adapt and manage herself. An ALJ must consider various factors when assessing medical evidence, *see* 20 C.F.R. § 404.1520c, but "cannot play the role of doctor and interpret medical evidence," *Liskowitz v. Astrue*, 559 F.3d 736, 741 (7th Cir. 2009) (citation omitted).

Ms. Mongosa argues that the administrative decision omitted reference to a psychiatric report from Dr. Robert McClurg, her psychiatrist at Kokomo Family Psychiatry [R. 405-415]. Dr. McClurg conducted a psychiatric assessment of Ms. Mongosa in December 2018 and found "pretty high psychiatric distress" and "excessive sensitivity . . . likely to take things personally and believe that it was done on purpose directed at her personally" [*id.* 18, 409]. Ms. Mongosa claims that Dr. McClurg's assessment contradicts the ALJ's conclusions in all four domains: the ability to understand, remember, and apply information; the ability to interact with others; her concentration, persistence and pace; and her ability to adapt and manage herself. She argues that by not grappling with, or even acknowledging, this contradictory evidence, the ALJ erred.[1]

An ALJ errs by disregarding medical opinion that is contrary to his conclusion. *Moore*, 743 F.3d at 1123 ("although an ALJ does not need to discuss every piece of evidence in the record, the ALJ may not analyze only the evidence supporting [his] ultimate conclusion while ignoring the evidence that undermines it"); *see also Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000); *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). The court will affirm a factual finding supported by

---

[1] The acting commissioner argues that the ALJ did not have to consider or reference Dr. McClurg's opinions because they were not opinions about Ms. Mongosa but rather opinions about what symptoms generally accompany her disorders. The acting commissioner cites the language of 20 C.F.R. § 404.1529(c): "we must . . . evaluate the intensity and persistence of *your* symptoms so that we can determine how *your* symptoms limit your capacity to work." But the acting commissioner seems to misclassify Dr. McClurg's opinions, which specifically reference Ms. Mongosa's symptoms and her ultimate diagnoses [R. 408-410 (discussing Ms. Mongosa's test results and some of the consequences)].

substantial evidence, *Biestek*, 139 S. Ct. at 1153-54, so long as it is not patently wrong, *Nasrallah v. Barr*, 140 S. Ct. 1963, 1962 (2020), or contrary evidence is not ignored, *Moore*, 743 F.3d at 1123.

Contrary to this argument of error, the ALJ identified Dr. McClurg's assessment twice and indeed credited his finding that her borderline personality disorder was probably not an accurate diagnosis; and the administrative decision even commented on one of his recommendations that the focus of Ms. Mongosa's treatment should be directed at her bipolar disorder [R. 18 (December 2018 evaluation doubting Ms. Mongosa's borderline personality diagnosis), 20 (December 2018 evaluation with recommendation), 410 (same)].

Furthermore, in independently reviewing Dr. McClurg's opinions, nothing strikes the court as materially inconsistent with the ALJ's findings that would necessitate additional explanation. Dr. McClurg noted that Ms. Mongosa's psychological evaluations resulted in high likelihood of inattentive and hyperactive/impulsive ADHD, bipolar disorder with some paranoid features, some features of OCD, and depression [R. 409]. These findings prove largely consistent with the ALJ's findings [*id.* 17]. Dr. McClurg noted that the combination of these conditions resulted in "pretty high psychiatric distress"—but again this is a statement consistent with the ALJ's severe impairment finding [*id.* 17, 409]. Additionally, Dr. McClurg elaborated on Ms. Mongosa's presented paranoid tendencies, which he explained were not paranoia in the "psychotic sense," but instead "excessive sensitivity, a low threshold for getting her feelings hurt" [*id.* 409]. But again, these findings are consistent with the ALJ's consideration of Ms. Mongosa's reported anger and mood swings and the corresponding interpersonal limitations placed on her ability to work [*id.* 18-20].

Yet Ms. Mongosa asserts that the ALJ's findings were not supported by substantial evidence because Dr. McClurg's opinions were contrary to the ALJ's findings in two domains specifically: her ability to interact appropriately with others and her ability to maintain focus and pace. She says the ALJ's failure to address these contradictions was error.

7

As to her ability to interact with others, Ms. Mongosa claims that the ALJ overstated her ability without addressing contrary evidence, such as her mood, anger, and Dr. McClurg's opinions [ECF 11 at 17; R. 224, 231-232]. The ALJ noted that Ms. Mongosa had some problems interacting with others, but she nonetheless demonstrated she could shop in stores, spend time with her family, and exhibited "a pleasant or bright mood and affect" during her psychiatric examinations [R. 18]. Ms. Mongosa counters by pointing to her own testimony about her inability to shop efficiently and fighting with her friends, family, and coworkers [ECF 11 at 17-18; R. 224, 231-232].

But the ALJ did consider Ms. Mongosa's evidence concerning her ability to interact with others, particularly her issues getting along with others [R. 18]. The ALJ discussed Ms. Mongosa's concern about maintaining employment because of how she interacts with others, and difficulties she experienced through unpredictable mood swings, feelings of judgment, distractedness, and anxiety [*id.* 20]. But despite her subjective personal testimony, the ALJ concluded the balance of the evidence in the record supported a conclusion that her interpersonal difficulties constituted only a moderate limitation [*id.*]. Still, in due regard for her concerns, the ALJ placed numerous social interaction limitations on her residual functioning, specifically that she could not work with the public and could have only occasional interactions with coworkers and supervisors [*id.* 19]. None of this was left unsupported by substantial evidence, or bereft of full consideration of the record.

Ms. Mongosa has not identified any inconsistency except to note that Dr. McClurg's opinion suggests some greater level of impairment and limitation than found by the ALJ. The court sees no such suggestion in the doctor's opinion. Dr. McClurg found that Ms. Mongosa was excessively sensitive, though not exhibiting "true paranoia" [R. 409]. This finding is consistent with the ALJ's discussion of Ms. Mongosa's difficulties interacting with others, including her mood swings, feelings of being judged, and problems with former coworkers, necessitating a moderate limitation [*id.* 19-21]. Dr. McClurg did not opine on how Ms. Mongosa's sensitivity limits her activities or impacts her

8

interactions; and Ms. Mongosa does not identify how Dr. McClurg's conclusion that she is quick to get her feelings hurt somehow obligates more limitations than that already found by the ALJ. Concluding that Dr. McClurg's opinion was consistent with the ALJ's finding in this domain, and the ALJ's conclusion was supported by substantial evidence in the record, no error exists.

As to the domains of daily activities and concentration, persistence, and pace, Ms. Mongosa argues that the ALJ overstated her abilities and overlooked contrary evidence. The ALJ acknowledged Ms. Mongosa's assertion that her conditions affected her ability to concentrate and complete tasks as well as to arrive on time and maintain personal hygiene [R. 19-20]. The ALJ also compared these reported difficulties with her medical records indicating that her symptoms were being managed—through not cured—through medication [*id.* 20]. Further, the ALJ cited Ms. Mongosa's ability to care for her dogs, do laundry, drive independently, go shopping two to three times a week, spend time with her family, and the general findings from her psychiatric examinations that she had normal attention and concentration and fair or good insight and judgment when making this finding [*id.* 18-19]. Ultimately, the ALJ concluded that Ms. Mongosa's personal reports of her limitations were not consistent with all the evidence, including the medical evidence [*id.* 21]. That said, the ALJ still acknowledged the difficulties Ms. Mongosa experienced in light of her severe medical conditions, and thus concluded that a moderate level of impairment, and restrictions as to the manner and type of work she could complete (routine, repetitive tasks without much change) was appropriate [*id.*].

Ms. Mongosa again asserts that Dr. McClurg's opinions contradict this finding. Looking to the substance of Dr. McClurg's assessment, he noted that Ms. Mongosa's ADHD and bipolar disorder were "highly likely to have both inattentive feature[s] and hyperactive/impulsive features" [*id.* 409]—which seems to be symptoms consistent with such a diagnosis and not an invitation for a greater level of accommodation than otherwise provided. To this point, Ms. Mongosa does not identify any

9

inconsistency between Dr. McClurg's statement as to the nature of her ADHD and bipolar disorder and the ALJ's conclusion that this diagnosis imparted no more than a moderate impairment.

A final note: the ALJ noted that Ms. Mongosa's mental condition fluctuated relative to stressful situations, such as medical concerns or work, but that her mental condition stabilized when the stress subsided [R. 21]. Medications were generally helpful [*id.*]. Ms. Mongosa claims that the ALJ did not have adequate evidence for this position because it was not explicitly stated by her healthcare providers. To the contrary, this assessment involved weighing Ms. Mongosa's testimony against the objective medical record [R. 21]. The ALJ drew on evidence about her affect and demeanor, over a period of years, as a patient of Katina Everding, A.P.N. [*id.* 20-21, 329-400, 460-77]; Cheryl Oden, L.M.H.C. [*id.* 21, 401-33]; Karen Samuels, N.P. [*id.* 21, 478-497]; as well as Dr. Zulfiqar Hashim [*id.* 20; 506-08]; Kahla Smitley, N.P. [*id.* 20, 499-505], and Dr. McClurg [*id.* 18, 21]. These providers indicated that despite times of stress, Ms. Mongosa's symptoms were well managed by her medications. [*id.* 21, 339, 343-45, 347, 407, 488, 492]. This conclusion was bolstered by Ms. Mongosa's own testimony and statements to her medical providers indicating that she went through periods of stress but nonetheless her medications helped [*id.* 21, 50, 338, 342, 404, 412, 471]. The ALJ's recitation and evaluation of this medical evidence while attributing weight to these sources was not error.

Far from being reversable error, the court concludes that Dr. McClurg's opinions both were considered by the ALJ and were consistent with the ALJ's ultimate conclusion. Further, the court concludes that the ALJ's findings were supported by substantial evidence in the record, as this evidence that was both consistent with his ultimate conclusion and sufficient to allow a reviewing court to follow his reasoning. *See Biestek*, 139 S. Ct. at 1154 (substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion").

To the extent he discounted Ms. Mongosa's subjective reports of her limitations, including her reliance on her husband, this discounting was explained as based on inconsistencies with the objective

medical evidence, including Dr. McClurg's opinions (identified as a report from "December 2018") [R. 20-21]. The court will not reweigh the evidence by retrospectively deciding Ms. Mongosa's subjective limitations are entitled to greater deference or reading into Dr. McClurg's opinions that Ms. Mongosa's "excessive sensitivity" or her diagnoses somehow implicate a greater degree of impairment than otherwise found by the ALJ, no less when Ms. Mongosa has not explained how or why Dr. McClurg's opinions obligate such a conclusion. *See Diaz*, 55 F.3d at 308 (reweigh). As the ALJ's conclusions are supported by substantial evidence from the record and explained in a manner that allows the court to follow from the evidence to his ultimate conclusions, there is no error.

B. *Vocational Analysis.*

Ms. Mongosa argues that the ALJ didn't consider evidence of "off-task" behavior and absenteeism when determining if Ms. Mongosa could sustain competitive work. The ALJ concluded that Ms. Mongosa would be able to work as a hand packer, assembler, or an office clerk [R. 21, 23].

Ms. Mongosa points to her testimony about off-task work, tardiness, and absenteeism. Ms. Mongosa testified to her own issues keeping doctor's appointments and said she was late or absent enough to warrant her termination from a medical practice due to unpaid late fees [R. 16, 336-37, 340-41, 348-49, 406, 469-70, 494]. She also points to the vocational expert's testimony that employers only tolerate up to fifteen percent of "off-task" behavior during the workday and allow no more than two unexcused absences or late arrivals in a month [*id.* 53-54]. Ms. Mongosa argues that the ALJ did not reconcile his findings with these facts.

The court disagrees. An ALJ again cannot disregard entire lines of contrary evidence, and that may include evidence of a claimant's off-task limitations, tardiness, and absenteeism. *See, e.g., Lothridge v. Saul*, 984 F.3d 1227, 1234 (7th Cir. 2021). But the ALJ addressed these issues. The ALJ noted that Ms. Mongosa "has persistent issues with being late to appointments even when she tries to give herself extra time to prepare" [R. 20]. Ms. Mongosa testified that she becomes easily distracted as she tries to

perform tasks or to ready for an appointment and that these distractions—often an overstimulus of tasks—pull her away from being timely [R. 44-47, 49]. The court cannot say the ALJ ignored this evidence; indeed, he considered it expressly.

The vocational expert heard this testimony, and the ALJ posited a hypothetical to the vocational expert that included, as a limitation, Ms. Mongosa's need to perform a job "with very few changes in the work setting" [*id.* 52]. The vocational expert testified that Ms. Mongosa could perform various jobs [*id.*]. The administrative decision accounted for this same limitation [*id.* 19] to ensure that residually Ms. Mongosa could perform jobs in the national economy (including certain past jobs of hers) that lacked this overstimulus of multiple tasks or distractions [*id.* 19-22], all the while noting that one psychological consultant (unchallenged in this appeal) concluded that Ms. Mongosa could attend to tasks for sufficient period to complete them [*id.* 21]. The ALJ credited this evidence, considering too her subjective complaints that limited her unskilled work that had "very few changes in setting" [*id.*]. This record demonstrates not only that the ALJ posed an appropriate limitation within the hypothetical to the vocational expert but also that the vocational expert considered the claimant's testimony and other evidence in offering an opinion—both providing substantial evidence on which the administrative decision could rely. *See Ragsdale v. Shalala*, 52 F.3d 816, 820 (7th Cir. 1995).

Ms. Mongosa cites additional questions to the vocational expert about a hypothetical person being off-task more than 20 percent of the time, or 15 percent of the time, and how many unexcused absences might be tolerated by employers [R. 53-54]. These appear to be more of academic interest—at least on this record—because Ms. Mongosa points to no evidence that she qualified as someone who would be off-task more than 20 percent of the time or have such unexcused absences each month. She instead cites evidence that one medical practice ended its relationship with her because of a resulting late fee. The record shows tardiness, often from disorganization and anxiety building from her distractions or stressors [R. 336-37, 340-41, 348-49, 406, 469-70, 494], but again the ALJ

12

accommodated this dynamic in the workplace and otherwise observed that her medications (some prescribed because of her attention deficit disorder and in part designed to aid her tardiness [*e.g.* R. 469-70]) generally helped—something that Ms. Mongosa admitted in her testimony [R. 46]—and would help in ensuring that she could get to the workplace. She testified that her medications fell short of eliminating the issue, but once more she has not shown that her residual limitations were of the worrisome scale of these alternative hypotheticals posed to the vocational expert. *See Weaver v. Berryhill*, 746 F. Appx. 574, 579 (7th Cir. 2018). Indeed, the record contains contrary evidence that she arrived on time for appointments, sometimes well early of appointments [*e.g.* R. 350, 356, 362, 368, 374, 378, 390, 392, 394, 396, 398]. Ms. Mongosa has not established an error in the administrative decision.

## CONCLUSION

Without an error, the court AFFIRMS the Commissioner's decision.

SO ORDERED.

July 29, 2022                                              *s/ Damon R. Leichty*
                                                          Judge, United States District Court